UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT L. FREDRICK,

Plaintiff,

v.

OFFICER JOHN RATKAY,

Defendant.

CAUSE NO. 3:23-CV-808-DRL-AZ

REPORT & RECOMMENDATION

Robert L. Fredrick, a prisoner without a lawyer, is proceeding in this case against Officer John Ratkay "in his individual capacity for compensatory and punitive damages for being deliberately indifferent to the wound on Robert L. Fredrick's arm between 5:45 P.M. and 6:15 P.M. on February 23, 2023, in violation of the Eighth Amendment[.]" ECF 10 at 4; *see also* ECF 20. The defendant moved for summary judgment, arguing Mr. Fredrick did not exhaust his administrative remedies before filing suit. ECF 43. The motion was denied because the court found the evidence was disputed as to whether Mr. Fredrick successfully initiated a Level 2 appeal. ECF 43. Specifically:

> [T]he Grievance Specialist attests Mr. Fredrick never submitted a completed grievance appeal form to the grievance office, and Mr. Fredrick responds he submitted a completed grievance appeal form to the grievance office on April 28, 2023. This creates a genuine dispute regarding whether Mr. Fredrick submitted a completed grievance appeal form to the grievance office. This dispute is material because if Mr. Fredrick submitted a completed form to the grievance office, the undisputed facts show he fully exhausted the administrative remedies that were available to him.

*Id*. at 4–5. Judge Damon R. Leichty referred the case to the undersigned "to conduct an evidentiary hearing and prepare a report and recommendation as provided for by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) to determine whether Mr. Fredrick successfully initiated a Level 2 appeal and, thus, fully exhausted Grievance 152592." ECF 50 at 2. The parties both conceded that no additional discovery was necessary to decide the issue.[1] ECF 52 & ECF 53. On December 8, 2025, a *Pavey* hearing was held. ECF 86. Mr. Fredrick appeared in person *pro se*, while the defendant appeared by attorneys Allison Pullam Morgan and Mary Bandstra. *Id*. The matter is now ripe for adjudication.

## I.    HEARING LOGISTICS

Copies of the final exhibit and witness lists are available at ECF 81 & ECF 84. The court will refer to those documents by their exhibit number noted on the exhibit lists as well as the corresponding docket entry numbers where applicable throughout this order.[2] The defendant called Mr. Fredrick and Joshua Wallen, the grievance specialist at the Indiana State Prison ("ISP"), to testify. *See id*. Mr. Fredrick didn't call any other witnesses, but he did recall Grievance Specialist Wallen to testify as his own witness. All witnesses were placed under oath by the court before testifying.

---

[1] Mr. Fredrick initially asked to subpoena former inmate Timothy G. Henson, IDOC # 128238, but because he didn't have the funds to pay the required $40 statutory witness attendance fee or any potential mileage fees, he agreed not to call him as a witness. *See* ECFs 61–65, 73.

[2] The exhibit and witness lists are sealed, but the corresponding docket entries are all available to the public.

## II.    FINDINGS OF FACT[3]

In 2023, ISP had an Offender Grievance Policy/Process (the "Process") in place under which inmates could grieve a broad range of issues, including their living conditions, retaliation for use of the grievance process, and the actions of prison staff. Mr. Wallen—who has worked as a grievance specialist at ISP for eight years—testified that copies of the Process were made available to all inmates at ISP, including in the law library and on their tablets. He further testified inmates were made aware of the Process during facility orientation. The Process had three steps: (1) an attempt at informal resolution to solve a problem followed by a formal grievance submission on State Form 45471; (2) a written Level 1 Appeal to the Warden/designee on State Form 45473; and (3) a written Level 2 Appeal to the Department Grievance Manager at the Indiana Department of Correction (IDOC) central office. Per the Process, offenders were required to submit grievances on State Form 45471 to the grievance specialist no later than ten (10) business days from the date of the incident. After a grievance was submitted, it underwent a screening process to determine whether it should be accepted and recorded or rejected and returned to the inmate unfiled.[4] If a grievance was accepted, a number was assigned to it, and a response was sent to the grieving

---

[3] In making the findings of fact, the court considered the exhibits as listed on the parties' exhibit list, the previously docketed corresponding exhibits, and the credibility of the witnesses at the *Pavey* hearing. The transcript from the *Pavey* hearing is available at ECF 90.

[4] Grievances were rejected and returned to the offender unfiled if they didn't meet the standards set forth in section X, subsection A of the Process. *See* Def. Ex. 2 "Offender Grievance Policy/Process" (ECF 25-2 at 10–11).

offender.[5] *See generally* <u>Def. Ex. 2</u> "Offender Grievance Policy/Process" (ECF 25-2); *see also* Testimony of Joshua Wallen, <u>Hearing Tr.</u> (ECF 90 at 9–11, 15).

If an offender disagreed with the grievance response, they had the opportunity to initiate a Level 1 appeal to the Warden/designee by checking the box on the form noting their disagreement, signing it, and dating it. The grievance specialist would then generate a State Form 45473, along with a copy of the original grievance, to send to the inmate to complete within five business days. Mr. Wallen testified he would take the following steps whenever a State Form 45473 Level 1 appeal was received:

> A. Well, we review it first to make sure that what's necessary is completed. If everything's completed, we then generate the receipt, and then we generate copies of both the form and the receipt. We give the offender back a copy of both the form and the receipt. Another copy is put into their packet, and then the original is given to -- here, it's given to our supervisor, who is the designee for the warden.
>
> Q. And does your office file-stamp those forms?
>
> A. Yes. We file-stamp everything we receive the day we receive it.

*See* Testimony of Joshua Wallen, <u>Hearing Tr.</u> (ECF 90 at 10–11); *see also generally* <u>Def. Ex. 2</u> "Offender Grievance Policy/Process" (ECF 25-2). The Warden/designee would then provide a response within ten business days of the receipt of the Level 1 appeal. *Id.*

If an offender was dissatisfied with that Level 1 appeal response—or if no response was received by the Warden/designee within the timeframe—they had the

---

[5] Mr. Wallen testified that the OGRE system—which was specifically used to track grievances—was in place at ISP during the events in question. The DELTA system, which included grievance tracking as well as "all kinds of data that the IDOC uses," later incorporated the OGRE system and replaced it. *See* Testimony of Joshua Wallen, <u>Hearing Tr.</u> (ECF 90 at 15). For purposes of this order, the terms will be used interchangeably.

option of filing a Level 2 appeal to the IDOC Offender Grievance Manager by checking

the disagree box, signing/dating it, and submitting the completed State Form 45473

back to the grievance specialist—along with any additional pertinent information—

within five business days of receiving the Warden/designee's Level 1 response (or lack

thereof). Mr. Wallen testified about this process as follows:

> Q. Thank you. Then if an incarcerated individual disagrees with a response to a Level 1 Appeal, what's the protocol for a Level 2 Appeal?
>
> A. They'll note their disagreement on both the designee – designee's form and on the appeal form itself, and then they'll resubmit both of those to our office. Once we receive those, we'll stamp them; and we'll generate two copies, once again, one for the offender and one for their packet. And then we take all of our original paperwork for the whole process for that case, including the Level 2 Appeal request, and we'll send that to Central Office through DELTA.
>
> Q. And when you say you generate two copies, those are two of the same copy? There wouldn't be two forms that look different, would there?
>
> A. No. No. It would be the exact same form that we received after we date-stamped it.

*See* Testimony of Joshua Wallen, Hearing Tr. (ECF 90 at 11–12); *see also generally* Def. Ex.

2 "Offender Grievance Policy/Process" (ECF 25-2).[6]

On February 25, 2023, Mr. Fredrick submitted Grievance 152592, complaining

that Officer Ratkay denied him medical care. Def. Ex. 4 "Documents/Case Log Report

for Grievance #152592" (ECF 25-4 at 8-9). On March 22, 2023, Mr. Wallen issued a

---

[6] The specific language states, "If the offender wishes to appeal the Warden's/designee's appeal response, the offender shall check the 'Disagree' box, *sign, and submit the completed State Form 45473, 'Offender Grievance Appeal,'* and any additional, pertinent documentation to the Offender Grievance Specialist within five (5) business days of the Warden's/designee's appeal response." Def. Ex. 2 "Offender Grievance Policy/Process" (ECF 25-2 at 14) (emphasis added).

response denying Grievance 152592. *Id.* (ECF 25-4 at 7). On April 6, 2023, Mr. Fredrick submitted a Level 1 appeal to the Warden/designee on State Form 45473. *Id*. (ECF 25-4 at 3). Mr. Wallen testified that he received that Level 1 appeal on April 12, 2023, and that he personally date-stamped and initialed it at the top of the page. Testimony of Joshua Wallen, Hearing Tr. (ECF 90 at 14); *see also* Def. Ex. 4 "Documents/Case Log Report for Grievance #152592" (ECF 25-4 at 3). On April 17, 2023, the Warden/designee denied Mr. Fredrick's Level I appeal. Def. Ex. 4 (ECF 25-4 at 2-3). On April 18, 2023, Mr. Fredrick attempted to submit a Level 2 appeal to the IDOC Offender Grievance Manager by returning the Response Report and checking the box that he disagreed with the Warden/designee's response to his Level I appeal, but he did not attach the previous State Form 45473 to that Response Report. Def. Ex. 5 "Response Report for Appeal Attempt" (ECF 25-5 at 2); *see also* Pl. Ex. D "All Documents for Grievance #152592 Grievance Appeal, and Response Reports" (ECF 24 at 7).[7] Mr. Wallen testified that, upon receipt of that incomplete Level 2 appeal attempt, he informed Mr. Fredrick in writing that if he wished to initiate a proper Level 2 appeal, he would need to submit the completed State Form 45473:

> Q. So can you describe to me what's on the screen right now?
>
> A. Yeah. So on the left we see the form from OGER that was printed out by Mr. Newkirk with his response on it, and on the right is the appeal form that Mr. Newkirk put his response on. On the left, I had noted at the

---

[7] Although faint, both of these copies of the returned Response Report contain a stamp at the top right corner indicating it was received and initialed by "JRW" on April 24, 2023. This is consistent with Mr. Wallen's summary judgment declaration in which he declared, "On April 18, 2023, Mr. Fredrick indicated that he disagreed with Mr. Newkirk's response on the Response Report. (Exhibit E) My office received this on April 24, 2023." Pl. Ex. A "Declaration of Joshua Wallen ISP Grievance Specialist" (ECF 25-1 at 11).

> bottom that the Level 1 Appeal form needed to be attached and it needed to be completed. . ..

Testimony of Joshua Wallen, Hearing Tr. (ECF 90 at 16). Mr. Wallen's testimony is consistent with his notation on the bottom right of the Response Report which states, "Need to attach completed Level 1 appeal form. JRW." Def. Ex. 5 "Response Report for Appeal Attempt" (ECF 25-5 at 2); *see also* Pl. Ex. D "All Documents for Grievance #152592 Grievance Appeal, and Response Reports" (ECF 24 at 7). It is also consistent with the contemporaneous note typed into the OCMS computer system by Mr. Wallen on April 24, 2023, which states, "I received the Response Report for Case #152592, but he was missing the completed level 1 appeal form which I noted needed to be attached." *See* Def. Ex. 7 "Grievance Specialist System Notation" (ECF 25-7 at 2).

This is where the parties' accounts begin to differ. The defense asserts that Mr. Fredrick then resubmitted the same signed copy of the Response Report with the State Form 45473 now attached to it, but the State Form 45473 was incomplete because the box at the bottom of it was not checked, nor was it signed or dated. Def. Ex. 6 "Plaintiff's Second Appeal Attempt, Incomplete State Form 45473" (ECF 25-6 at 2). Mr. Wallen testified that he received the resubmitted Response Report and incomplete State Form 45473 on May 3, 2023, initialed and stamped them at the top with that date, made a second notation at the bottom of the corresponding Response Report noting that "Appeal form is incomplete. JRW," and returned the incomplete Level 2 appeal documents to Mr. Fredrick:

7

A. . . . And then next to that, I noted that the appeal form is incomplete; and that's because when we received the appeal form back, the bottom was incomplete. It wasn't noted a disagreement, signed, or dated.

Q. And on the right, the form that says 'Grievance Appeal' at the top – it's Form 45473 -- can you identify the stamp or stamps at the top?

A. Let's see. The clearer one: April 12, 2023. Then the other one -- well, on the screen, it's kind of difficult for you –

Q. It's a little light on the screen?

A. Yeah. Q. Do you recall when that was stamped?

A. I believe that was in -- I believe that was in May.

Q. That's correct. We've identified it elsewhere –
. . . .

Q. We've identified it elsewhere as May 3rd. Just the stamp on the screen is a little unclear. So at the bottom of this form on the right, can you describe what's at the bottom of the form?

A. Yeah. At the bottom of the appeal form is a spot for the offender to disagree or agree with the warden or designee's response. That's the spot where, when they want to go to a Level 2 Appeal, they need to check that they disagree, sign, and date.

Testimony of Joshua Wallen, <u>Hearing Tr.</u> (ECF 90 at 16–17). Mr. Wallen's testimony is consistent with the unsigned version of the document Mr. Fredrick himself filed with the court and turned over to defense counsel during the discovery process. *See* ECF 24 at 5. Mr. Wallen testified that Mr. Fredrick didn't properly initiate a Level 2 appeal because the grievance office never received a completed State Form 45473 grievance appeal form back from Mr. Fredrick even though he "still [had] time to submit a complete appeal" after the second deficiency was documented. Testimony of Joshua Wallen, <u>Hearing Tr.</u> (ECF 90 at 19). Mr. Wallen further pointed out that if Mr. Fredrick

had resubmitted a complete State Form 45473, "[t]here would have been a third stamp somewhere towards the top" and a copy would have been placed in Mr. Fredrick's offender packet which is maintained by the IDOC. *Id*. at 18–19. As noted above, Mr. Wallen testified there is no record of that signed copy in IDOC's physical or electronic files.

Mr. Fredrick, on the other hand, asserts he did submit a completed State Form 45473 on April 28, 2023, after receiving the written notification from Mr. Wallen that his Level 2 appeal was deficient. He testified as follows at the *Pavey* hearing:

> So I turned that paperwork in, the first thing, thinking that I had -- honest to God, thinking that I had turned it in. Then when he sent that back to me stating that I didn't do that, I'm, like, what is he talking about? So when he said what he is talking about, then I'm, like, something is wrong; something is missing. So I went all through my paperwork. Once I went through all my paperwork, I found what he was talking about. So when I found what he was talking about, I sent back and put -- and it was -- the date was April the 28th. When I put that in, I gave it to him. I sent it in the mail. We don't have a grievance box. I put it in the U.S. mail. It only have one stamp on there, and that was April the 12th. So then when I sent that back to him, my grievance process was done.

Testimony of Robert L. Fredrick, <u>Hearing Tr.</u> (ECF 90 at 43). Although Mr. Fredrick did not submit it during discovery, he filed a signed copy of this document in response to the defendant's motion for summary judgment. *See* <u>Pl. Ex. D</u> "All Documents for Grievance #152592 Grievance Appeal, and Response Reports" (ECF 29-1 at 31, filed Aug. 29, 2024, and ECF 32-5 at 95, filed Sept. 24, 2024).[8] Mr. Fredrick testified that the

---

[8] As noted above, the document he filed during the discovery process on July 2, 2024—in response to the defendant's request for production dated June 25, 2024, seeking "all documents in your possession related to your attempts at exhausting your claims set forth in your complaint" (ECF 22 at 5)— was an unsigned, incomplete version of that same State Form 45473.

reason he failed to turn the signed copy of State Form 45473 over during discovery is because his dorm was shaken down and "all [his] papers got misconstrued." Testimony of Robert L. Fredrick, Hearing Tr. (ECF 90 at 42–43). However, upon cross-examination, Mr. Fredrick testified this occurred sometime in April of 2023, when he sent the paperwork in to "finish" his appeal:

> Q. Your dorm. I apologize. When you're talking about your dorm being messed up, is that in April of 2023?
>
> A. Somewhere in that time, yes. Because when he sent that to me -- when you guys sent me -- when he sent it to me and said I messed up, like, a few days before that, my area got straight torn because they had like 19 officers in there. And when 19 officers are in there, they just tore our area up. They was looking for something. I think it was drugs. And, unfortunately, drugs come in now on paper, and they've been using legal paper to send -- to spray for drugs. So they went through all my paperwork. Stuff got scattered all over the place. So when things got scattered all over the place, I turned around and I sent -- when you asked -- well, not you, ma'am -- but when they asked for discovery, which I don't understand why -- I'll talk about that later. Yet at the same time when they did that, I'm, like, what -- I sit back and I sent what I thought I had. But at the same time I already had that paperwork because I had sent it already to him. You understand what I'm saying to you now?
>
> Q. No, sir. I guess my point of confusion is when you're talking about your dorm being messed up, are you talking about that happening during the process of you writing your grievances and appeals –
>
> A. No, no, no.
>
> Q. -- or are you talking about the discovery process?

---

ECF 24 at 5; *see also* Def. Ex. 6 "Plaintiff's Second Appeal Attempt, Incomplete State Form 45473" (ECF 25-6 at 2). Upon direct examination, Mr. Fredrick testified as follows:

> Q. So to be clear, in your response, you filed a copy of the State Form 45473 with the received stamp from May 3rd but no signature from April 28th; correct?
>
> A. Yes, but I had got copies of that and -- go ahead. But, yes. Yes.

Testimony of Robert L. Fredrick, Hearing Tr. (ECF 90 at 42–43).

10

A. I'm talking about just before the -- just when I sent the paperwork into him to finish my appeal, and it had to be from that point to the discovery process because my dorm was tore up -- I mean, not my -- my area was tore up bad for some reason, and that's what I'm talking about. Do you understand what I'm saying now?

*Id*. (*id*. at 44–45).

During Mr. Fredrick's direct examination of Mr. Wallen, Mr. Fredrick asked several questions about the timing and procedure of Mr. Wallen's return of the first incomplete Level 2 appeal initiation attempt:

Q. [BY MR. FREDRICK] You stated that I -- that you sent to me that I needed to attach the Level 1, complete level form appeal. That was one message, but you put a line through it and said it was two. Because when you sent this message to me, sir, you said that it was incomplete and that you needed -- and that I needed to finish it. But yet at the same time, you put a line through it to make it look like two messages, and that wasn't true; is that correct?

A. No.
. . . .

Q. Mr. Wallen, I'm sorry you and me are having this problem and as far as me getting all this information to you. But the bottom line is, sir, I submitted the forms to you. I don't understand why -- and maybe you can help me. I don't understand why you didn't -- you said that you filed everything in your files to the IDOC, but yet it's only one time, but yet you said you sent two things to me stating that I didn't do what I was supposed to do, that I needed to -- that the appeal form was incomplete, and I needed to attach the complete level appeal. You said you sent that to me twice, but in the files that you said that you sent to the -- that you sent for the grievance, you only put it there once that I needed to get -- that I messed up. I don't understand why you only put it in there once when you said I messed up twice.
. . . .

A. I believe the notes you're referring to, the one time, was the notes I put in to what was called OCMS at the time --
. . . .

11

Q. Yes.

A. -- that the caseworkers used. Putting information in there from a grievance officer was not standard. It was something that we were given permission to do at another point, and I did it when I had the time. At a minimum, I kept my notes on the documents that you showed and that we kept in our office so that we at least had that trail.

Testimony of Mr. Wallen, Hearing Tr. (ECF 90 at 37–39). When questioned further by counsel on cross examination, Mr. Wallen explained his procedures for documenting and making notations on documents in general and on the Response Report in this particular case:

[A.] The line is to separate another instance of adding a note. I do apologize for not marking out a previous note. It's something I've kind of considered lately, but I didn't want to mark it off so that it would be hard to read at a later time. And so the line was to indicate, well, here's a second message, and it's next to the first message. I try to keep it at the bottom, or whatever, so it's, like, out of the way but you can still see it.

Q. And just for clarity, which message was first and which message was second of those two messages you wrote?

A. The one on the right was first, and that's because I start as far as off to the side as I can so that I'm not, you know, mixing up with other data on the form. So I try to keep things out of the way, and I start on the right and then I work my way to the left.

Testimony of Joshua Wallen, Hearing Tr. (ECF 90 at 41).

### III.   ANALYSIS OF THE EVIDENCE

In the Prison Litigation Reform Act ("PLRA"), Congress mandated that prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been

12

exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019). Thus, to exhaust remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.*

Nevertheless, inmates are only required to exhaust administrative remedies that are actually available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper, but rather, whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered "available." *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Based on the evidence presented here—including careful consideration of the credibility and demeanor of the witnesses during the *Pavey* hearing, as well as a review of the relevant evidence submitted over the course of this litigation—the court finds

that Mr. Fredrick did not return a signed and completed State Form 43475 sufficient to initiate a Level 2 appeal. During the *Pavey* hearing, Mr. Wallen explained how the grievance process functions and how records are maintained. It is undisputed that Mr. Fredrick properly completed a Level 1 appeal of Grievance 152592. It is also undisputed that Mr. Fredrick attempted to initiate a Level 2 appeal when he signed the Response Report on April 18, 2023, and submitted it to the grievance office. However, both the credible and consistent testimony of Mr. Wallen plus the documentation available in the record show that Mr. Fredrick did not successfully complete the final step.

Mr. Fredrick admits his initial attempt at a Level 2 appeal on April 18, 2023—which was received by the grievance office on April 24, 2023, and initialed/date-stamped by Mr. Wallen that same day—was incomplete. He acknowledges Mr. Wallen advised him in writing that he didn't properly attach a completed State Form 45473 form to his appeal. He blames the lapse on his papers getting "misconstrued" following a search of his dorm in April of 2023, and he insists that he subsequently went through all of his paperwork, found the State Form 45473, signed and completed it, and sent it to Mr. Wallen on April 28, 2023.[9] Even assuming all of that is true, the problem for Mr. Fredrick is the preponderance of the evidence shows that State Form 45473, although submitted, was *not* properly signed or completed.

---

[9] As will be discussed in detail below, Mr. Fredrick also uses the search of his dorm/disarray of his papers to justify his discovery omission that occurred more than a year later.

14

Mr. Wallen testified credibly that: (1) he received the incomplete State Form 45473 and the resubmitted Response Report together on May 3, 2023; (2) he date-stamped and initialed them both that same day; (3) he made an additional notation at the bottom of the Response Report on May 3, 2023, indicating the State Form 45473 appeal was incomplete; (4) he reissued those documents to Mr. Fredrick; and (5) he never received a completed State Form 45473 back in response. Mr. Fredrick makes much of the fact that Mr. Wallen's notes on the Response Form are separated by a vertical line at the bottom of the page—and he insists that the notations were made at the same time on April 24, 2023, in connection with the first deficiency notice—but the court finds that Mr. Wallen's explanation regarding those notations being sequential on April 24, 2023, and then May 3, 2023, is both credible and logical.[10]

Mr. Wallen's version of events is bolstered by the history of the case and the documentary evidence in the record. First, Mr. Fredrick only turned over to the defendant/filed with the court the unsigned, incomplete version of the State Form 45473 during discovery—he didn't file the signed copy until *after* the defendant filed his motion for summary judgment. Mr. Fredrick attempts to explain this lapse by arguing it was simply a mistake due to his dorm being shaken down and his papers being shuffled about. He filed a declaration in response to the motion for summary judgment stating that his dorm was searched "days prior" to the defendant's request for

---

[10] The same is true of Mr. Wallen's explanation as to why he made only one notation in the OCMS computer system on April 24, 2023—it was a discretionary, additional step not mandated by the grievance process.

production dated June 25, 2024, and that when he filed his response on July 2, 2024, he mistakenly failed to include the signed copy because the "corrections officers left his bed location in disarray, and papers, including legal documents, scattered among his bed location, including legal documents in the bed locations of other offenders." ECF 29-1 at 2; *see also* ECF 32-5 at 69. However, Mr. Fredrick's testimony at the *Pavey* hearing was far less than clear. He testified that the search happened in April of 2023, when Mr. Wallen first pointed out his Level 2 appeal deficiency. He then seemed to conflate the appeal deficiency issue with the request for production issue but ultimately confirmed that the search was "just when I sent the paperwork into him to finish my appeal" in April of 2023. Testimony of Robert L. Fredrick, Hearing Tr. (ECF 90 at 44–45). He also seemed to suggest that the disarray extended "from that point to the discovery process" (*id.* at 45), but that explanation is neither plausible nor credible since more than a year elapsed between the two time-periods. Moreover, this testimony is inconsistent with Mr. Fredrick's declaration which definitively stated the shakedown happened in late June of 2024 and made no mention of an April 2023 shakedown.

Second, the unsigned copy of State Form 45473 produced by Mr. Fredrick to the defendant during the discovery process is entirely consistent with Mr. Wallen's version of events: (1) the State Form 45473 was originally initialed and date-stamped by Mr. Wallen on April 12, 2023, following Mr. Fredrick's submission of the Level 1 appeal on April 6, 2023; (2) the Warden/designee denied the Level 1 appeal on April 17, 2023, and the Response Report and a copy of the State Form 45473 were given to Mr. Fredrick; (3) Mr. Fredrick signed and filled out the Response Report on April 18, 2023, indicating his

disagreement with the Warden/designee's response but failed to attach a copy of the State Form 45473 to it; (4) Mr. Wallen received the signed Response Report from Mr. Fredrick on April 24, 2024, initialed and date-stamped it, made a notation on the bottom right side of that form noting that the completed State Form 45473 needed to be attached, and sent it back to Mr. Fredrick; (5) Mr. Fredrick resubmitted the Response Report along with an incomplete, unsigned State Form 45473; and (6) Mr. Wallen received those documents on May 3, 2023, initialed and date-stamped them, made an additional notation on the bottom of the Response Report indicating that the State Form 45473 was incomplete, and sent those documents back to Mr. Fredrick. The unsigned copy of State Form 45473 produced by Mr. Fredrick during discovery contains both the original date-stamp of April 12, 2023, and the second date stamp of May 3, 2023, at the top of the page, which aligns with Mr. Wallen's testimony and the IDOC records. ECF 24 at 5.

Finally, in light of the aforementioned facts, the court does not find Mr. Fredrick's assertion that he signed, completed, and mailed the State Form 45473 to the grievance office on April 28, 2023, to be convincing or credible. The court agrees with the defendant that if Mr. Fredrick signed and submitted State Form 45473 on April 28, 2023, as he insists, it is not logically plausible that the *unsigned* version of the form would exist with both an April 12, 2023, and a May 3, 2023, date-stamp on it. Yet, that is the version of State Form 45473 that Mr. Fredrick himself turned over and filed with the

17

court during the discovery process.[11] Accordingly, the weight of the evidence suggests Mr. Fredrick falsified the completed copy of State Form 45473 after-the-fact in an attempt to prevent summary judgment from being granted in the defendant's favor.

In sum, the court finds Mr. Fredrick's testimony was inconsistent, confusing, and implausible, which weighed heavily against his credibility. On the other hand, the defendant presented credible, consistent, and persuasive testimonial and documentary evidence that Mr. Fredrick failed to exhaust his administrative remedies because he did not submit a completed State Form 45473 as required. *See Lockett*, 937 F.3d at 1025 (The law takes a "strict compliance approach to exhaustion.").

## IV.    CONCLUSION

For the reasons set forth above, the court finds Robert L. Fredrick did not successfully initiate a Level 2 appeal of Grievance 152592 as was required to complete the administrative process. Therefore, the court **RECOMMENDS** that the claims against Officer John Ratkay be **DISMISSED WITHOUT PREJUDICE** for Mr. Fredrick's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**NOTICE IS HEREBY GIVEN** that within 14 days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  FED. R. CIV. P. 72(b); 28 U.S.C. §

---

[11] With the exception of the checked box, signature of Mr. Fredrick, and date next to that signature, the two versions of State Form 45473 filed by Mr. Fredrick are identical—from the double date-stamps at the top of the page down to a distinctively shaped artifact on the very bottom of the page. *Compare* ECF 24 at 5 (filed Jul. 2, 2024), *with* ECF 29-1 at 31 (filed Aug. 29, 2024). Mr. Fredrick did also add a handwritten "Exhibit D-7" to the bottom right corner of the page on the signed version he filed during the summary judgment phase. *See* ECF 29-1 at 31.

636(b). Failure to file objections within the specified time waives the right to appeal. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239 (7th Cir. 1996).

SO ORDERED on this 11th day of May 2026.

s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT